**PABLO CRUZ and LEONOR CRUZ, Plaintiffs**

**v.**

**JUANITA ORTIZ CRUZ, Defendant**

## Civil No. 1402/1978
## Territorial Court of the Virgin Islands
### Div. of St. Croix at Christiansted
## March 16, 1979

KENNETH R. LINDQUIST, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

JOSEPH L. COSTELLO, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION AND JUDGMENT

This action commenced upon plaintiffs' complaint seeking restitution of premises, met by defendant's counterclaim seeking restitution for funds and the value of labor expended for improvements made on plaintiff's property under the mistaken belief that defendant, individually or jointly with her husband, owned the subject property. The counterclaim further asserted that defendant's mistake

could not have been discovered with due diligence, was reasonable under the circumstances, and that, although plaintiffs had notice of her mistake and the work being done, did nothing to terminate the work.

At the commencement of trial, it was stipulated that plaintiffs were the owners of the property in question; that defendant resides on that property but has never paid rent; that plaintiffs demanded she vacate the premises on approximately four occasions, which she refused to do; and that a written notice to quit was properly served. These facts appearing, it is clear that plaintiffs are entitled to restitution of the premises pursuant to the provisions of Chapter 31 of Title 28 of the Virgin Islands Code. There remained at trial, therefore, only the disposition of the counterclaim.

Plaintiffs, Pablo and Leonor Cruz (hereinafter "Pablo" and "Leonor," respectively), bought Plot 21A in Estate Castle Coakley, St. Croix, in 1960, and their son, Hipolito Cruz Nieves (hereinafter "Hipolito"), erected a two-room wood and galvanized house on the property. Thereafter, in 1961, prompted by financial difficulties, Hipolito and his wife, Juanita (defendant-counterclaimant herein), and their children moved onto the property and occupied the house rent free. A slow process of enlarging and remodeling the house commenced in 1968 and, when completed in 1970 or 1971, resulted in a house that had five rooms and was different in almost every respect from the original.

In 1973 or 1974, while Hipolito and Juanita were living in the first, completed house, construction on a second house on the same property was commenced. When the house was approximately 60% complete, serious marital difficulties between Hipolito and Juanita made further work unfeasible and the construction terminated.

Hipolito and Juanita obtained a divorce in 1977. The divorce decree ordered Hipolito to provide shelter for Juanita

191

and their children, and further provided that that duty "may be fulfilled by permitting [them] to reside at 21A Estate Castle Coakley, St. Croix."[1]

Juanita and her children remained in the home after the divorce and continue to reside there. Pablo and Leonor, however, have now ordered them off the property, and the ensuing dispute has led to the filing of this lawsuit.

It appears from the uncontradicted evidence, and I so find, that Juanita's funds, along with bank loans taken out by her former husband and contributions from Pablo and Leonor, were the sources of funds for the venture.

The employment history Juanita gave indicates that since undertaking employment in 1964, she has held jobs with various employers, and that she was working during the period 1968 to 1971 when remodeling of the first house took place. This testimony was corroborated, in part, by testimony of Carmen Sealey, a personal friend of Juanita's, that she worked with Juanita from 1965 to some time in 1968 for Summer Time, a watch manufacturer. Defendant's Exhibit 3 in evidence, a letter addressed to defendant's counsel by Watches, Inc., verified that Juanita was in its employment from October 12, 1969, to May 30, 1971.[2] Further corroboration is found in the fact that the family moved to Plot 21A in the first instance because they could not afford to live elsewhere only on Hipolito's salary of $6,000 per year. Given the family's financial situation, and the evidence recited above, it is more probable than not that Juanita was working during the remodeling of the first house. I am also persuaded by Juanita's uncontradicted testimony that she was working during the construction of the second house.

The fact of Juanita's employment and her testimony that

___

[1] Plaintiffs' Exhibit No. 4 in evidence.

[2] Defendant's testimony established that she worked for Unitime, Summer Time, Watches, Inc., and Atlantic Time from 1964 through the present time, except for intermittent short periods of time due to illness.

she regularly gave money to her husband to be used for construction costs, sometimes turning over her entire paycheck to him, provides ample basis for concluding that she was contributing to the family coffers and that she helped to a substantial, albeit unascertainable, degree in the financing of the improvements.

Furthermore, Juanita contributed to the construction by assisting in the labor. Her testimony that she painted, carried materials to her husband as he worked and cleaned up the site is entirely believable. As for the second house, Juanita's testimony concerning her contribution of labor in construction was corroborated by Carmen Sealey who made weekly visits while the construction took place. Additionally, the testimony of several witnesses clearly establishes that Juanita often prepared meals and coffee for the workers.

I find further that Juanita contributed to the improvements in good faith and while under a reasonable belief that her husband, or she and her husband jointly, owned the property. Juanita stated that Hipolito told her twice, each time in response to her direct questioning, that they owned the property. Hipolito denies this. He admitted, however, that prior to this litigation, he told his brother he owned the property. He represented to the Government of the Virgin Islands in 1962 that he was the owner by executing a building permit application relative to the subject property,[3] affixing his name in the space provided for "Signature of Owner or Agent".[4] This course of conduct establishes that he was inclined, when convenient or, in his mind, advantageous, to hold himself out as the owner of the property.

---

[3] The building permit contained the following statements:

"Use of Building: Living of own family
Owners of Building: Hipolito Cruz
Plans prepared by: Hipolito Cruz
Name of Builder or Contractor: Hipolito Cruz"

[4] At trial, Hipolito admitted that the signature is his.

Juanita's belief in her ownership was also based on her husband's receipt, in his name, of some tax bills and their ostensible payment by her husband. She introduced into evidence two 1977 documents from the Virgin Islands Government, each designated as a "Notice of Change of Assessment and Real Property Tax Bill". One of these documents bears the name of Hipolito Cruz, and the other Pablo and Leonor Cruz.[5]

Because the bill addressed to her husband contained 21A Castle Coakley under the heading, "Description of Property", she believed that her husband was the owner of this property. While it is true that the bill indicated that the charge was assessed against the improvements on Plot 21A, and not against the land itself, one not familiar with such documents, who had only completed the 7th grade of elementary school, could understandably reach the conclusion that the assessment was against the land. It is especially understandable that Juanita reached that conclusion since she reads little English.

Thus, Hipolito's assurances to Juanita and his handling of the taxes would naturally lull her into a sense of security regarding the status of title to the property. Since a unique, confidential, trust relationship should and must exist in a marriage, it would be unrealistic and contrary to common experience for this Court to expect a wife to examine title to property her husband has said is theirs. No other inference can be drawn, except that when the improvements were made, Juanita reasonably believed, and she had a right to believe from the statements and actions of her husband, that they owned the property.

Pablo's conduct in this matter encompassed contribution of money for and supervision of work on the first house,

---

[5] See Defendant's Exhibit 1 in evidence. The court is cognizant of the fact that the tax bill bearing Pablo and Leonor Cruz' names assesses land, while the bill bearing Hipolito's name assesses improvements.

and Leonor's consists of monetary aid for construction of the second house. The testimony of all the parties establishes that Pablo attended the property regularly during the construction of both houses to visit with his sons while they worked.[6] The least that the credible evidence shows is that Pablo and Leonor had full knowledge of their own legal title; that they stood by, watched and acquiesced fully in Juanita's expenditures in the houses; and that they failed at any time to assert their ownership until after substantial improvements were made. Even then, their assertion of ownership was precipitated by Pablo's recognition of the marital difficulties which arose between Juanita and Hipolito.[7] At the very least, Pablo and Leonor permitted Hipolito to hold himself out as owner of the property when they knew or should have known that he was doing so.

## CONCLUSION

■■ The general rule of law is that one who, in the mistaken belief that he or a third person on whose behalf he acts is the owner, causes improvements to be made on the land of another, is *not entitled* to restitution from the owner. Restatement of Restitution, § 42 (emphasis added). The rule, however, is not without exception. The Restatement Reporter's note in Comment (b) to Section 42 that the rule does not apply "to one who, having notice of the error and of the work done, stands by and does not use care to prevent the error from continuing."

■ Since I am compelled to agree with Juanita's factual assertions, the exception to the rule of no restitu-

---

[6] The testimony establishes that Hipolito, his brothers and his friend performed most of the labor, the others assisting in varying ways and degrees from time to time.

[7] Pablo's testimony was unequivocal in stating that he never objected to construction of the first house, and that he objected to construction of the second house only after he "knew the marriage wouldn't end up right."

tion discussed in Comment (b) will be applied and restitution granted.[8]

■ The correct measure of damages is the value of the improvements and not the amount of Juanita's expenditures, James v. Bailey, supra, fn. 8. Defendant is entitled to an equitable lien on the property for the reasonable value of the improvements to which she contributed. Although that amount cannot be calculated with exactitude, a reasonable estimate can be computed. The estimated market value of the property with its improvements is $45,000.[9] The value of the land to which defendant has no entitlement ($6,000) will be subtracted. The remaining $39,000 must be divided by four since contributions for the improvements were made by four people in unascertained proportions. An equitable lien of 25% of the value of the improvements, or $9,750, will be imposed upon the land for the benefit of defendant.[10]

## JUDGMENT

In accordance with the provisions of the Memorandum Opinion entered on even date herewith; it is

ORDERED, ADJUDGED AND DECREED that plaintiffs be and they hereby are granted restitution of the premises commonly known as 21A Estate Castle Coakley, Christiansted, St. Croix; and it is further

---

[8] Although I place my reliance on this well-settled exception, even viewing plaintiffs' conduct in the light most favorable to them, the same conclusion would be reached under the general equitable rule that "where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enabled such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment." 31 C.J.S., Estoppel, § 103. See also James v. Bailey, 10 V.I. 382 (D.C. 1974).

[9] Testimony of Robert Cobb, Real Estate Appraiser.

[10] This conclusion is not inclusive of any rights defendant herein may have against her former husband. If it be later determined that Mr. Nieves has an interest in the land, by virtue of the findings of fact in the divorce decree, his interest may be subjected to a lien in defendant's behalf upon an appropriate application for such relief in that action.

ORDERED, ADJUDGED AND DECREED that a writ of restitution may issue therefor on or after the tenth day following the entry of this Judgment; and it is further

ORDERED, ADJUDGED AND DECREED that defendant have judgment against plaintiffs, jointly and severally, in the sum of $9,750 on the counterclaim, and that the recording of this judgment shall constitute a lien against the premises 21A Castle Coakley in favor of the defendant; and it is further

ORDERED, ADJUDGED AND DECREED that the costs of this action shall be taxed in favor of defendant and against the plaintiffs, including reasonable attorney's fees which shall be established by supplemental order upon the filing of an appropriate affidavit or other presentation in accordance with the Estien v. Christian guidelines.